STATE OF NORTH CAROLINA v. WILLIAM HARVEY BLANKENSHIP

No. 862SC17

(Filed 5 August 1986)

**Homicide § 28.1— self-defense—failure to instruct error**
    The trial court in a homicide case erred in failing to charge on self-defense where defendant's evidence tended to show that he was in the home of a friend upon her invitation; deceased was bigger and stronger than defendant; deceased grasped defendant's throat and held him off the ground while choking him; and defendant did not intend to shoot deceased but instead intended to use the gun as a club to defend himself.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 15 August 1985 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 3 June 1986.

The defendant was charged in a proper bill of indictment with the first degree murder of Stevie Foster. The State's evidence tends to show that on 22 November 1984 the defendant was at the home of Joy Melvin Wright in Washington, North Carolina. Ms. Wright went to the store, leaving the defendant alone in the house. On her way she encountered her boyfriend, the deceased, whom she told of the defendant's presence in the house. The deceased stated "I don't like [the defendant]. He sent a lot of my friends to prison down at Morehead, and I don't want to be around him." Ms. Dixon told the deceased that he should ask the defendant to leave. When Ms. Dixon returned from the store she saw the defendant running across the backyard. The defendant told her that he was leaving because he did not want a fight. Later that afternoon the deceased and others were at Ms. Wright's house when the defendant returned wearing his "fighting clothes." Several witnesses testified that the defendant entered the living room, pulled a gun from his coat pocket and shot the deceased from across the room.

The defendant testified that before he encountered the deceased, Ms. Wright told him that "her boyfriend had been drinking that day and that he got mean when he was drinking, he liked to fight, and that if he said anything to us, me and Ricky both, when he came back, just to get up and leave." After Ms. Wright left the defendant alone in the house the deceased entered the house, accused the defendant of being a "snitch from Morehead," and then asked the defendant if he wanted to fight about it. The defendant left the house to avoid a fight. Another man told the defendant the deceased was "always like that." After returning to his house the defendant changed his clothes, realized he had left money from a beer purchase with Ms. Wright and decided to return for the money.

The defendant testified further that before returning to the house he borrowed a gun for protection. When he and his girlfriend arrived at Ms. Wright's house, the defendant told her that if a woman answered the door he would go in to get the money but that if a man answered the door she should go in because he did not want to get into a fight. When he knocked on the door a woman said "come in" and he entered. The deceased immediately rushed toward the defendant, grabbed him by the neck and began choking him while holding him six to eight inches off the ground.

The deceased was larger and stronger than the defendant. When the defendant was unable to remove the deceased's hands from his neck he pulled the gun from his pocket in an effort to hit the deceased in the head. The deceased grabbed the gun, they struggled and the deceased was shot. The defendant testified the gun went off during the struggle and he never intended to shoot the deceased.

The defendant was convicted of second degree murder. He appealed from a prison sentence of forty years.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Wayland J. Sermons, Jr., P.A., for the defendant appellant.*

WEBB, Judge.

The defendant assigns error to the court's failure to charge on self-defense. We believe this assignment of error has merit.

> The right to act in self-defense is based upon necessity, real or apparent, and a person may use such force as is necessary or apparently necessary to save himself from death or great bodily harm in the lawful exercise of his right to self-defense. A person may kill even though it be not necessary to kill to avoid death or great bodily harm if he believes it to be necessary and he has reasonable grounds for such belief. The reasonableness of his belief is to be determined by the jury from the facts and circumstances as they appeared to the accused at the time of the killing.

*State v. Deck*, 285 N.C. 209, 214, 203 S.E. 2d 830, 834 (1974). In this case the defendant testified the deceased grasped his throat and was holding him off the ground while choking him. If the jury had believed this testimony they could have found that the defendant reasonably believed he was in danger of death or great bodily harm. It was for the jury to determine whether the defendant used more force than was necessary to protect himself. The jury could have found that the defendant did not intend to shoot the deceased but intended to use the pistol as a club in defending himself. If they had found that he did so but the pistol went off accidentally during the struggle they should have found the defendant not guilty. If the jury had found that the defendant inten-

tionally shot the deceased they should have determined whether he reasonably believed it was necessary to shoot the deceased to protect himself from death or great bodily harm.

We do not believe *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973), *State v. Ogburn*, 60 N.C. App. 598, 299 S.E. 2d 454, *disc. rev. denied*, 308 N.C. 546, 304 S.E. 2d 240 (1983), or *State v. Berry*, 35 N.C. App. 128, 240 S.E. 2d 633, *cert. denied*, 294 N.C. 737, 244 S.E. 2d 155 (1978), upon which the State relies, are precedent for this case. In *Watkins* there was no evidence of a felonious assault. In this case the defendant's evidence was that the deceased was a larger and stronger man than the defendant. The deceased was holding the defendant off the floor by the throat and choking him. The jury could find from this evidence that the defendant was in reasonable apprehension of death or great bodily harm. In *Ogburn* the defendant's evidence showed the victim was shooting at the defendant when the defendant pushed the victim's hand and the victim accidentally shot herself. In this case there was evidence from which the jury could have concluded that the shooting was an accident or that the defendant intentionally shot the deceased. In *Berry* the defendant's evidence showed he was holding a pistol at his side when the deceased struck the pistol, causing it to discharge. This provided no evidence of self-defense.

The State also contends the defendant may not rely on self-defense because the evidence showed he entered the fight without a lawful excuse. *See State v. Hunter*, 315 N.C. 371, 338 S.E. 2d 99 (1986); *State v. Montague*, 298 N.C. 752, 259 S.E. 2d 899 (1979); *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971); and *State v. McConnaughey*, 66 N.C. App. 92, 311 S.E. 2d 26 (1984). The jury could have found from the evidence that the defendant was in a place he had a right to be and that he did not bring on the altercation. This would give him the right to use self-defense.

We do not discuss the defendant's other assignments of error. We find that as to each of them there was either no error or the questions they raised should not recur at a new trial.

New trial.

Judge WHICHARD concurs.

Judge JOHNSON concurs in the result.